UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| G.B.,<br><br>                   Plaintiff,<br><br>v.<br><br>JADE NAILS HAIR SPA, a/k/ a JADE HAIR & NAIL SALON, a/k/a JADE NAIL SALON, a/k/a JADE NAILS AND SPA, a/k/a JADE NAILS & MASSAGE SPA, a/k/a JADE HAIR SALON, ALLEN NHIN, LARKEN ASSOCIATES, A LIMITED PARTNERSHIP, and JOHN AND JANE DOES (A-Z), JOHN DOE CORPORATIONS (A-Z), JOHN DOE PARTNERSHIPS (A-Z), JOHN DOE LIMITED LIABILITY COMPANIES (A-Z) , JOHN DOE BUSINESS COMPANIES (A-Z), JOHN DOE BUSINESS ENTITIES (AZ), JOHN DOE SOLE PROPRIETORSHIPS (AZ) , AND/OR JOHN DOE JOINT VENTURES (AZ),<br><br>                   Defendants. | No. 19 -06093-JMG |

**DEFENDANT LARKEN ASSOCIATES, A LIMITED PARTNERSHIP'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO  FEDERAL  RULE OF CIVIL PROCEDURE 12(B)(6)**

Dated: June 4, 2020

By: s/Adrian K. Cousens
Adrian K. Cousens, Esq.
33 S. Seventh Street
Allentown, PA  18105-4060
acousens@grossmcginley.com
Phone:  610-820-5450
Attorneys for Defendant, Larken Associates, A Limited Partnership

## Table of Contents

I.    **MATTER BEFORE THE COURT** ....................................................................... **3**

II.    **STATEMENT OF PROCEDURAL HISTORY** ........................................... **3**

III.   **STATEMENT OF FACTS AS ALLEGED IN PLAINTIFF'S COMPLAINT**............ **3**

IV.   **LEGAL ARGUMENT** .......................................................................... **6**

  A.  Standard for Rule 12(b)(6) Motion to Dismiss ................................... 6

  B.  Plaintiff's Claim Against Defendant Larken under 18 Pa.C.S.A. § 3051(a)(2)(i) Fails as a Matter of Law ................................................................................................... 7

    i.   Pennsylvania's Human Trafficking Statute ..................................................... 7

    ii.   Plaintiff has not alleged facts that constitute human trafficking ..................................... 9

    iii.  The allegations against Larken fall within the Safe Harbor provision of the Human Trafficking Act ....................................................................................... 13

    iv.  Plaintiff does not allege that Larken participated in human trafficking ................... 15

V.   **CONCLUSION** ..................................................................................... **16**

# Table of Authorities

**Federal Cases**

*ALA, Inc. v. CCAIR, Inc.,* 29 F.3d 855, 859 (3d Cir. 1994) ........................................... 6

*Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) ............................................................ 7

*Bell Atlantic Corp., Inc. v. Twombly,* 550 U.S. 544, 557 (2007) .................................... 7

*City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 (3d Cir. 1998) ............ 6

*Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir. 1993) .................................................. 6

*Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997) ......................... 6

*Port Auth. of N.Y. and N.J. v. Arcadian Corp.,* 189 F.3d 305, 312 (3d Cir. 1999)....... 7

*United States v. Union Corp.*, 194 F.R.D. 22, 2373 (E.D. Pa. 2000) ........................... 7

**State Cases**

*A.B. v. Marriott Int'l, Inc.*, No. CV 19-5770, 2020 WL 1939678 (E.D. Pa. Apr. 22, 2020) ... 9, 10, 14, 16

**State Statutes**

18 *Pa.C.S.A.* 3001 ............................................................................................ 8, 11, 12

18 *Pa.C.S.A.* 3011 ............................................................................................... 8, 15

18 *Pa.C.S.A.* 3012 ............................................................................................... 12, 16

18 *Pa.C.S.A.* 3051 ............................................................................................... passim

18 *Pa.C.S.A.* 3125 ............................................................................................... 11

18 *Pa.C.S.A.* 3126 ............................................................................................... 11

18 *Pa.C.S.A.*3012 ............................................................................................... 9

**Federal Rules**

*F.R.C.P.* 12(b)(6) .............................................................................................. 3, 5, 6

AND NOW comes Defendant, Larken Associates, A Limited Partnership, (hereinafter "Defendant Larken"), by and through his counsel, Gross McGinley, LLP, and files the instant Motion to Dismiss Plaintiff's Complaint against Moving Defendant, pursuant to *F.R.C.P.* 12(b)(6) as follows:

## I.        MATTER BEFORE THE COURT

Moving Defendants' Motion to Dismiss Plaintiff's Complaint pursuant to *F.R.C.P.* 12(b)(6) in that Plaintiff's Complaint fails to state claims against Moving Defendant upon which relief may be granted.

## II.        STATEMENT OF PROCEDURAL HISTORY

On or about December 24, 2019, Plaintiff G.B., by and through her counsel, Joan A. Feinstein, Esquire, filed a Complaint in the United States District Court for the Eastern District of Pennsylvania, at Civil Docket Number 5:19-cv-06093-JMG. *See* ECF Number 1, 5:19-cv-06093-JMG.

## III.        STATEMENT OF FACTS AS ALLEGED IN PLAINTIFF'S COMPLAINT

1.        Plaintiff's Complaint names the following Defendants and several fictional Defendants: Jade Nails Hair Spa, a/k/a Jade Hair & Nail Salon, a/k/a Jade Nail Salon, a/k/a Jade Nails and Spa, a/k/a Jade Nails & Massage Spa, a/k/a Jade Hair Salon (collectively, hereinafter "Defendant, Jade Spa"), Allen Nhin (hereinafter "Defendant Nhin")and Larken Associates, A Limited Partnership (hereinafter "Defendant Larken"). Ibid.

2.        Plaintiff alleges that on or about December 24, 2017 she visited Jade Spa where Defendant Nhin inappropriately touched while performing massage therapy and that this inappropriate touching was done deliberately done in a sexual manner. *Id.* at ¶¶11-20.

3.        Specifically, Plaintiff alleges the following:

12. On or about December 24, 2017, the Plaintiff, her daughter, and her niece visited Defendant Jade Spa, then operating under the name "Jade Hair and Nail Spa", located at 1408 Hanover Ave., Allentown, Pennsylvania 18109, in Lehigh County.

13. At the time, the Plaintiff sought massage therapy for neck and back pain.

14. The massage therapist who offered to do the procedure was Defendant Nhin.

15. The Plaintiff was led to a massage room, away from the public view of other customers.

16. Nhin then began massaging the Plaintiff's neck, but then moved down to begin massaging her breasts.

17. At the time, the Plaintiff believed that, although the touching was inappropriate, Nhin was a "professional", and so she believed that perhaps this was part of a legitimate massage therapy procedure.

18. Nhin then touched the Plaintiff's nipples, at which point she began to become concerned that perhaps Nhin was deliberately touching her in a sexual manner.

19. However, then Nhin moved away from the Plaintiff's breasts and nipples and moved down towards her pelvis.

20. Nhin then moved lower and lower, until he had reached the top part of the Plaintiff's vagina, at which point she forcefully stopped him from touching her genitalia further.

21. The Plaintiff, scared, frightened, and hoping for a quick end to this outrageous behavior, waited until Nhin had completed the massage, and then quickly exited the business.

[Id. at ¶¶12-21]

4.      Plaintiff states in her Complaint that when she reported the incident to the Allentown Police Department, an investigation was launched and that during a discussion with the prosecutor assigned to the case she was advised that Defendant Nhin had been previously prosecuted for the same kind of behavior. *Id.* at ¶¶25-32.

5.      Plaintiff states in her Complaint that in July 2016, Defendant Nhin was arrested and charged with aggravated indecent assault without consent, indecent assault without consent and attempted aggravated indecent assault, in connection with a similar incident to that involving Plaintiff, involving an unknown victim on or about July 6, 2016 and as a result, Defendant Nhin was sentenced to probation. *Id.* at ¶¶32-33.

6.      Plaintiff alleges damages as a result of the incident involving Defendant. Nhn. *Id.* at ¶34.

7.      Plaintiff's Complaint contains the following Counts:

        I – Assault v. Defendant Nhin
        II – Battery v. Defendant. Nhin
        III – Intentional Infliction of Emotional Distress v. Defendant Nhin

IV – Negligent Supervision and Hiring v. Defendant Jade Spa and Doe Defendants
V – Negligence v. Defendant Jade Spa and Doe Defendants
VI – Vicarious Liability v. Defendant Jade Spa and Doe Defendants
VII – Sex Trade Liability 18 *Pa.C.S.A.* § 3051(a)(2)(i) – Profit From Sex Trade v. Defendant Jade Spa and Doe Defendants
VIII – Sex Trade Liability 18 *Pa.C.S.A.* § 3051(a)(2)(i) – Profit From Sex Trade v. Defendant Larken
[*Ibid.*]

8.     In her claim against Defendant Larken, Plaintiff alleges that Defendant Jade Spa rented space from Larken associates and operated openly to the public from that space. *Id.* at ¶77.

9.     Factually, the allegations in paragraph 77 of the Complaint are inaccurate because the landlord for the premises rented by Defendant Jade Spa was Hanover Avenue Partners, LLC and not Defendant Larken. Defendant Larken is a management company and has no ownership interest in the property, however this motion is not predicated on misidentification of the landlord, it is predicated on the claim made against any entity that is now, or later alleged to be the landlord for the rented space. In the event that Plaintiff later amends her Complaint to identify the correct landlord, the arguments set forth in this motion apply equally to that entity. Furthermore, Moving Defendant is aware that misidentification of a party in the pleading is not the basis for a *F.R.C.P.* 12(b)(6) motion and this information is for informational purposes for the Court. This information was also supplied to Plaintiff's counsel together with a copy of the appropriate lease when the undersigned consulted with counsel pursuant to Judge Gallagher's Policies and Procedures at B5.

10.     Plaintiff alleges that Defendant Larken "knew or should have known that Nhin had previously been arrested for similar sexual crimes occurring on their premises in July of 2016". Id. at ¶78.

11.     Plaintiff alleges that Defendant Larken is liable under 18 *Pa.C.S.A.* 3051(a)(2)(i) "as they have profited from acts suffered by the Plaintiff, and knowingly provided good or services to Nhin, Jade Spa and the Doe Defendant, pursuant to 18 *Pa.C.S.A.* § 3051 (a)(2)(i)." *Id.* at ¶79.

12.     Plaintiff alleges that she "has suffered and continues to suffer damages by reason of Nhin's conduct, conducted as an agent and/or employee of Defendants Jade Spa and Doe Defendant, while Jade Spa rented the property from Larken Assocaites". *Id*. at ¶80.

13.     Plaintiff seeks "judgment against the Defendant Larken Associates, jointly and severally, for damages sustained by the Plaintiff, in an amount sufficient to compensate her for the injuries she has suffered, medical expenses, and all other amounts necessary to compensate her for Defendant Nhin's tortious conduct, conducted while he acted as an agent or employee of Jade Spa and Doe Defendants, and while Jade Spa rented from Larken Associates, including actual damages, compensatory damages, punitive damages, costs including reasonable attorney's fees, pre-judgment and post-judgment interest, and any and all other relief this Honorable Court deems just and appropriate." *Id*. at Claim for Relief, ¶h.

## IV.     LEGAL ARGUMENT

### A.   Standard for Rule 12(b)(6) Motion to Dismiss

In considering a motion to dismiss for failure to state a claim, the Court must "consider only those facts alleged in the complaint and accept all of the allegations as true." *ALA, Inc. v. CCAIR, Inc.,* 29 F.3d 855, 859 (3d Cir. 1994). However, the court is not required to assume that facts not asserted in the complaint are true nor is it required to "accept legal conclusions either alleged or inferred from the pleaded facts." *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir. 1993); *see also City of Pittsburgh v. West Penn Power Co*., 147 F.3d 256, 263 (3d Cir. 1998); *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997).

A claim is legally insufficient, if, "even taking all the factual allegations as true and making every favorable inference in favor of the pleader, no relief could be granted because the complaint states a wrong for which there clearly is no legal remedy or because the plaintiff is without the

right or the power to assert that particular claim." *United States v. Union Corp.*, 194 F.R.D. 22,

2373 (E.D. Pa. 2000) (citing *Port Auth. of N.Y. and N.J. v. Arcadian Corp.,* 189 F.3d 305, 312 (3d

Cir. 1999)).  The United States Supreme Court clarified that Federal Rule of Civil Procedure 8

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v.*

*Iqbal,* 129 S.Ct. 1937, 1949 (2009). A complaint is NOT sufficient "if it contends 'naked

assertion[s]' devoid of 'further factual enhancement." *Id.* (quoting *Bell Atlantic Corp., Inc. v.*

*Twombly,* 550 U.S. 544, 557 (2007)).  Where a complaint does not provide enough factual support

to show that its claims are "plausible", a court should grant a motion to dismiss. *Iqbal,* 129 S.Ct.

at 1950.

Adhering to these standards, Plaintiff's claims against Defendant Larken in Count Eight

In determining whether dismissal of the complaint is appropriate, courts use a two-part

analysis. First, courts separate the factual and legal elements of the claim and accept all of the

complaint's well-pleaded facts as true. *Fowler v. UPMC Shadyside,* 578 F.3d 203, 201-11 (3d Cir.

2009). Second, courts determine whether the facts alleged in the complaint are sufficient to show

that the plaintiffs have a "plausible claim for relief." *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679)).

Adhering to these standards, Plaintiff's claims against Defendant Larken in Count Eight

must be dismissed as a matter of law.

### B.  Plaintiff's Claim Against Defendant Larken under 18 Pa.C.S.A. § 3051(a)(2)(i) Fails as a  Matter of Law

#### i.   Pennsylvania's Human Trafficking Statute

Under the Pennsylvania statute on Human Trafficking, the following provides for the basis

of the crime:

**(a) Offense defined.--**A person commits a felony:
(1) of the first degree if the person recruits, entices, solicits, advertises, harbors, transports,
provides, obtains or maintains an individual if the person knows or recklessly disregards
that the individual will be subject to sexual servitude;

(2) of the first degree if the person knowingly benefits financially or receives anything of value from any act that facilitates any activity described in paragraph (1);

(3) of the second degree if the person recruits, entices, solicits, advertises, harbors, transports, provides, obtains or maintains an individual if the person knows or recklessly disregards that the individual will be subject to labor servitude; or

(4) of the second degree if the person knowingly benefits financially or receives anything of value from an act which facilitates any activity under paragraph (3).

[18 *Pa.C.S.A.* 3011]

The definitions set forth:

**"Sex act."** Any touching or exposure of the sexual or other intimate parts of any individual for the purpose of gratifying sexual desire of any individual.

...

**"Sexual servitude."** Any sex act or performance involving a sex act for which anything of value is directly or indirectly given, promised to or received by any individual or which is performed or provided by any individual and is induced or obtained from:

(1) A minor.

(2) Any other individual by any of the means set forth in section 3012(b).

[18 *Pa.C.S.A.* 3001]

Section 3012 of the Act provides:

**(a) Offense defined**.--A person commits a felony of the first degree if the person knowingly, through any of the means described in subsection (b), subjects an individual to labor servitude or sexual servitude, except where the conduct is permissible under Federal or State law other than this chapter.

**(b) Means of subjecting an individual to involuntary servitude.--**A person may subject an individual to involuntary servitude through any of the following means:

(1) Causing or threatening to cause serious harm to any individual.

(2) Physically restraining or threatening to physically restrain another individual.

(3) Kidnapping or attempting to kidnap any individual.

(4) Abusing or threatening to abuse the legal process.

(5) Taking or retaining the individual's personal property or real property as a means of coercion.

(6) Engaging in unlawful conduct with respect to documents, as defined in section 3014 (relating to unlawful conduct regarding documents).

(7) Extortion.

(8) Fraud.

(9) Criminal coercion, as defined in section 2906 (relating to criminal coercion).

(10) Duress, through the use of or threat to use unlawful force against the person or another.

(11) Debt coercion.

(12) Facilitating or controlling the individual's access to a controlled substance.

(13) Using any scheme, plan or pattern intended to cause the individual to believe that, if the individual does not perform the labor, services, acts or performances, that individual or another individual will suffer serious harm or physical restraint.
[18 *Pa.C.S.A.*3012]

The Legislature also enacted a civil remedy for victims under the Human Trafficking Act:

**(a) General rule.--**
(1) An individual who is a victim of human trafficking may bring a civil action against any person that participated in the human trafficking of the individual in the court of common pleas of the county where the individual resides or where any of the alleged violations of this chapter occurred.
(2) An individual who is a victim of the sex trade may bring a civil action in the court of common pleas of the county where the individual resides against a person that:
(i) recruits, profits from or maintains the victim in any sex trade act;
(ii) abuses or causes bodily harm to the victim in any sex trade act; and
(iii) knowingly advertises or publishes advertisements for purposes of recruitment into sex trade activity.
[18 *Pa.C.S.A.* 3051]

The Legislature also created a safe harbor specifically within the statute:

**(b) Exception.--**This section shall not be construed to create liability for any person who provides goods or services to the general public and to a person who would be liable under subsection (a)(2), absent a showing that the person:
(1) knowingly markets or provides its goods or services to a person liable under subsection (a)(2);
(2) knowingly receives a higher level of compensation from a person liable under subsection (a)(2); or
(3) supervises or exercises control over a person liable under subsection (a)(2).
[18 *Pa.C.S.A.* 3051]

### ii.    Plaintiff has not alleged facts that constitute human trafficking

The Honorable Mark A. Kearney of this Court has recently evaluated civil claims for trafficking under 18 *Pa.C.S.A.* 3051 in  *A.B. v. Marriott Int'l, Inc.*, No. CV 19-5770, 2020 WL 1939678 (E.D. Pa. Apr. 22, 2020) and examining that opinion is instructive when applying to the facts alleged in this case. In that case, the Plaintiff brought an action against Defendant Marriott under Federal and the Pennsylvania statutes providing civil remedies for sex trafficking. The facts alleged by *A.B.* were that she was forced into commercial sex trafficking against her will and then

9

sold to a sex trafficker who forced her to perform sexual acts for money at Marriott's Philadelphia

Airport Hotels. The specific facts of the alleged use of Marriott's hotels for trafficking are as

follows:

> Between 2009 and 2011, her traffickers forced her into "in calls" at the three Marriott
> owned Philadelphia Airport hotels by as many as six men an evening. Each man entered
> and exited rooms at the three Philadelphia Airport hotels, and a "constant stream of male
> visitors" went to her room "straight from the main lobby and front doors so that the foot
> traffic was both voluminous and obvious." Her traffickers frequently paid for rooms at all
> three hotels for at least a week at a time with a prepaid credit card and hotel staff were
> aware of A.B.'s presence there A.B.'s traffickers brought her to each hotel with little, if
> any, luggage and she did not have a phone, wallet, or any form of identification. The hotel
> rooms where she performed commercial sex acts "were littered with multiple broken
> objects, used condoms, and other sex paraphernalia left behind in the rooms." The staff at
> each of the three hotels saw signs of her visible injury and were aware of frequent "loud
> altercations" as well as "constant" attacks on her by her trafficker loud enough for staff and
> hotel patrons to hear.
>
> Her trafficker continued to force her into commercial sex for five years. A.B. avers Marriott
> through hotel video surveillance and complaints regarding "suspicious activity" had actual
> or constructive notice of drug dealing, prostitution, "and/or general safety concerns at its
> hotels." If Marriott paid attention to these activities at its hotels, including the "red flags"
> surrounding A.B.'s trafficking, she believes "it would have been impossible for them not
> to notice [her] victimization."
> [*Id*. at 2]

The Court went on to find that hospitality industry in general and Marriott's executives,

directors and managers knew of the issue of sex trafficking in their hotels and had met to discuss

that issue, *Ibid*.

The Court noted that:

> A.B. specifically pleads Marriott knew or should have known sex trafficking in their
> Philadelphia Airport hotels between 2009 and 2014, including the practices of "in calls"
> and "out calls" and failed to adopt and enforce anti-trafficking policies from the corporate
> level to the "property level," failed to train staff on how to detect and respond to sex
> trafficking, failed to establish safe and secure reporting mechanisms at local hotels, and
> failed to take measures to prevent sex trafficking at its hotels to conceal sex trafficking
> occurring at its hotels. Despite its knowledge of sex trafficking in its hotels, Marriott did
> nothing to stop it, and, when Marriott eventually began to adopt policies to combat sex
> trafficking, "it did so in appearance only."
> [*Id*. at 3]

The facts as alleged by the Plaintiff in this case are, of course horrible and unconscionable and this motion does not seek in any way to minimize or excuse the acts which are alleged to have been committed by Defendant Nhin, if they occured. Unlike the *A.B.* case however, where the allegations were specifically that A.B. was forced into sex trafficking against her will, the allegations here are of a different nature.

Plaintiff describes that she sought out massage therapy for her neck and while undergoing what she believed would be just a massage, the Defendant Nhin touched her inappropriately on her breasts and then attempted to touch her vagina, which she forcibly stopped. The massage concluded and Plaintiff left the premises.

The acts described by Plaintiff could give rise to indecent assault under 18 *Pa.C.S.A.* 3126(a)(1) or perhaps attempted aggravated indecent assault under 18 *Pa.C.S.A.* 3125(a)(1), but they do not allege acts that constitute trafficking.

Fundamental to the definition of the offense of human trafficking of a sexual nature under the Human Trafficking Act is that the victim "will be subject to sexual servitude". 18 *Pa.C.S.A.* 3001.

Sexual servitude is defined, in part, as "[a]ny sex act or performance involving a sex act for which anything of value is directly or indirectly given, promised to or received by any individual". *Ibid.* It is not disputed that the actions of Nhin, if true, fit the definition of a sex act under the Act. What is not alleged, however is that the unwanted touching was performed for value. Plaintiff did not state in her Complaint whether she paid for the massage in question, but assuming *arguendo* that she did, she certainly did not pay for Nhin to perform a sex act on her. Quite the contrary, she alleges she was sexually assaulted by Nhin while undergoing a neck

massage. On its face therefore, the actions alleged by Plaintiff do not fit within this definition of sexual servitude.

Sexual servitude is further defined as "[a]ny sex act or performance involving a sex act … which is performed or provided by any individual and is induced or obtained from:

(1) A minor."
[*Ibid*.]

Plaintiff's Complaint does not state her age, but nowhere in her pleading does she allege she was a minor at the time of the alleged assault by Defendant Nhin.

Sexual servitude is further defined as "[a]ny sex act or performance involving a sex act … which is performed or provided by any individual and is induced or obtained from:

(2) Any other individual by any of the means set forth in section 3012(b)."
[*Ibid*.]

Section 3012(b) of the act refers to subjecting a person to involuntary servitude in any of thirteen different ways: Causing or threatening to cause serious harm to any individual; Physically restraining or threatening to physically restrain another individual; Kidnapping or attempting to kidnap any individual; Abusing or threatening to abuse the legal process; Taking or retaining the individual's personal property or real property as a means of coercion; Engaging in unlawful conduct with respect to documents, as defined in section 3014 (relating to unlawful conduct regarding documents).; Extortion; Fraud; Criminal coercion, as defined in section 2906 (relating to criminal coercion); Duress, through the use of or threat to use unlawful force against the person or another; Debt coercion; Facilitating or controlling the individual's access to a controlled substance; or using any scheme, plan or pattern intended to cause the individual to believe that, if the individual does not perform the labor, services, acts or performances, that individual or another individual will suffer serious harm or physical restraint. 18 *Pa.C.S.A.* 3012(b).

None of the actions alleged by Plaintiff against Defendant Nhin fall within the statutory definitions of involuntary servitude.

As undoubtedly horrible as the alleged actions of Defendant, Nhin were, none of the actions pled by the Plaintiff amount to any actual Human Trafficking as defined under the statute pursuant to which Plaintiff seeks recourse in this suit against Defendant Larken. Absent Human Trafficking, a claim under 18 *Pa.C.S.A.* 3051 is not sustainable against Moving Defendant and must be dismissed.

### iii.   The allegations against Larken fall within the Safe Harbor provision of the Human Trafficking Act

The Plaintiff alleges that Defendant Larken profited from the goods and services it provided to Defendant Nhin, Defendant Jade Spa or the Doe Defendants. Therefore in examining the civil remedy under Section 3051 Plaintiff is relying on section (a)(2)(i) against a person that: recruits, profits from or maintains the victim in any sex trade act.

The Legislature enacted the safe harbor provision of Section 3051 so that the civil remedy would not be available to a victim against **"**any person who provides goods or services to the general public and to a person who would be liable under subsection (a)(2)". 18 *Pa.C.S.A.* 3051(b).

The exceptions to this safe harbor are where the person: "(i)knowingly markets or provides its goods or services to a person liable under subsection (a)(2); (ii) knowingly receives a higher level of compensation from a person liable under subsection (a)(2); or (iii) supervises or exercises control over a person liable under subsection (a)(2)." *Ibid*.

There is no allegation in the Complaint that Larken received any higher compensation or supervised or exercised any control over anyone who committed trafficking and Plaintiff specifically pleads that she is moving for relief under Section 3051(a)(2)(i).

13

The inquiry therefore is whether Plaintiff has sufficiently pled that Defendant Larken **knowingly** markets or provided its goods to a human trafficker. On its face therefore, constructive knowledge is not sufficient to remove a person from the safe harbor provisions of the statute. Actual knowledge is required.

The only reference to knowledge in G.B.'s pleadings is the allegation by Plaintiff that Defendant Larken "knew or should have known that Nhin had previously been arrested for similar sexual crimes occurring on their premises in July of 2016". *Plaintiff's Complaint* at ¶78.

Again, it is instructive to look at Judge Kearney's opinion in *A.B.* as he examined this exact issue. In that case the Plaintiff alleged that Marriott knowingly marketed or provided goods to the Plaintiff's sex trafficker and her pleading set forth the following factual allegations:

> In paragraph 54, A.B. alleges: "Defendant Marriott knew, as of at least early 2006, that human trafficking was occurring in its hotels and across its brand. Because of this, Defendant Marriott amended its Human Rights Policy as early as 2006 to require annual review of its policy. To date the policy merely states 'Marriott supports the elimination of all forms of forced, bonded or compulsory labor and provides associate training on human trafficking awareness and prevention.' "
> In paragraph 127, A.B. alleges: "Marriott's acts, omissions, and commissions, outlined above, constitute a violation of [section 3051]. Specifically, Marriott had a statutory obligation not to benefit financially from a venture it knew was engaged in the sex trade. At all relevant times, Marriott breached this duty by knowingly participating in, and facilitating, the harboring and provision of A.B. for purposes of commercial sex induced by force, fraud, or coercion, by its acts, omissions, and commissions."
> [*A.B. supra*, at 22]

The Court examined those allegations and determined that they did not "contain sufficient facts to allow us to draw a reasonable inference Marriott 'knowingly market[ed] or provide[d] its goods or services' to A.B.'s trafficker." *Id*. at 23. What the paragraphs did allege was "constructive knowledge", which was not sufficient under the act and the Court dismissed the claims under the Act on that basis. *Ibid*.

In this case, the scienter is even more attenuated than the facts alleged by A.B. against Marriott. The only allegation of knowledge is the allegation that Defendant Nhin was previously arrested for aggravated indecent assault without consent, indecent assault without consent and attempted aggravated indecent assault that allegedly took place at the premises and he was placed on probation. Plaintiff does not allege any facts that support a conclusion that Defendant Larken had any actual knowledge of the prior arrest, guilty plea or sentencing, nor of the alleged actions taken by Nhin. All that she has alleged is that it 'knew or should have known'. Plaintiff has essentially pled a tort standard. That is not enough under the Act. Actual knowledge must be asserted with some scintilla of factual allegation supporting it and that is absent in the Complaint, so the claim must fail.

### iv.   Plaintiff does not allege that Larken participated in human trafficking

The provisions of Section 3051 (a)(1) provide a civil remedy for a victim of human trafficking "against any person that participated in the human trafficking". As set forth above, it is disputed that Plaintiff was subjected to human trafficking, as the facts alleged in her complaint constitute a sexual or indecent assault, but not trafficking under the Act. Furthermore, Plaintiff has not specifically alleged that Larken participated in human trafficking, Nevertheless, applying the same analysis undertaken by Judge Kearney in *A.B.* it is instructive to look at the statute when read at its most expansive interpretation to determine if the allegation in the Complaint could be read to allege that Defendant Larken participated in trafficking. Applying a strict reading of the statute makes clear that in order to participate, an actor must have done so knowingly. The Court first examined 18 *Pa.C.S.A.* 3011 which imposes criminal liability if the person:

> (1) "recruits, entices, solicits, advertises, harbors, transports, provides, obtains or maintains an individual if the person knows or recklessly disregards that the individual will be subject to sexual servitude;" or (2) "knowingly benefits financially or receives anything of value from any act that facilitates any activity described in paragraph (1).

[*A.B.*, *supra*, at 23]

Then Judge Kearney examines section 3012 of the Act which "imposes criminal liability upon a person who "'knowingly ... subjects an individual to labor servitude or sexual servitude, except where the conduct is permissible under Federal or State law other than this chapter.'" *Ibid*.

He goes on to conclude that:

[t]he Pennsylvania statute does not include 'should have known' language … Pennsylvania's statute's civil remedy specifically does not create liability for 'any person who provides goods or services to the general public' and cannot be civilly liable absent a showing of 'knowingly markets or provides its goods or services' to a trafficker.
[*Id*. at 24]

G.B. does not allege that Defendant Larken participated in trafficking and therefore does not allege conduct on the part of Defendant Larken which falls within 18 *Pa.C.S.A.* 3012(a)(2).

## V.        CONCLUSION

The only claim against Defendant Larken in Plaintiff's Complaint are under 18 *Pa.C.S.A.* 30512(a)(2)(i), the civil remedy instituted under Pennsylvania's Human Trafficking Act. As set forth in detail above, a thorough and expansive reading of Plaintiff's Complaint reveals that she has not stated a claim upon which relief can be granted against Defendant Larken. She has not alleged facts that support a claim that she was subjected to human trafficking. Instead she has described what would constitute the basis for an indecent assault. Furthermore, the facts as set forth in the pleading do not meet the exceptions of the safe harbor provision of 18 *Pa.C.S.A.* 3012(b). Finally, Plaintiff has not alleged facts that support a claim that Defendant Larken participated in human trafficking under the Act.

Examined in their entirety, the facts as alleged by Plaintiff, if true, do not state a claim for civil liability for Defendant Larken under the Act and should be dismissed.

Respectfully submitted,

16

By: s/Adrian K. Cousens
Adrian K. Cousens, Esq.
33 S. Seventh Street
Allentown, PA  18105-4060
acousens@grossmcginley.com
Phone:  610-820-5450
Attorneys for Defendant, Larken Associates,
A Limited Partnership

Dated: June 4, 2020

01426463.DOCX