**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| G.B., | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No. 5:19-cv-06093-JMG |
| | : | |
| JADE NAILS HAIR SPA, *et al.*, | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                    **September 13, 2021**

Plaintiff G.B. requests entry of default judgment on the grounds that Defendants Jade Nails Hair Spa ("Jade Nails") and Allen Nhin (collectively, "Defendants") have failed to plead or otherwise defend against the complaint. (*See* Mot., ECF No. 22.) For the reasons set forth below, Plaintiff's motion is conditionally granted in part.

## I.    BACKGROUND

### A.    Factual Allegations[1]

In December 2017, G.B. was visiting family in Pennsylvania when she decided to obtain massage therapy for her neck and back pain. (Compl. ¶¶ 11–13, ECF No. 1.) G.B. went with her daughter and niece to Jade Nails, a spa located in Allentown. (*Id.*) A male masseuse, Nhin, offered to perform the massage. (*Id.* ¶ 14.) Nhin escorted G.B. to a private room. (*Id.* ¶ 15.)

The massage started normally, but Nhin then started massaging G.B.'s breasts. (*Id.* ¶ 16.) While G.B. believed the touching to be inappropriate, she thought that Nhin's behavior was

---

[1] In reviewing this motion, we must determine "whether the unchallenged facts constitute a legitimate cause of action." *Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 270 (E.D. Pa. 2014) (internal quotation marks and citation omitted). "As at the motion to dismiss stage, the court accepts as true the well-pleaded factual allegations in the plaintiff's complaint, except those relating to damages, as though they were admitted or established by proof." *Id.* (citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)).

perhaps part of a legitimate massage therapy procedure.  (*Id.* ¶ 17.)  Nhin then proceeded to touch G.B.'s nipples, "at which point [G.B.] began to become concerned that . . . Nhin was deliberately touching her in a sexual manner."  (*Id.* ¶ 18.)

Nhin then moved towards G.B.'s pelvis and reached her genitalia.  (*Id.* ¶¶ 17–20.)  At that point, G.B. forcibly stopped Nhin from touching her genitalia any further.  (*Id.* ¶ 20.)  "[S]cared, frightened, and hoping for a quick end to this outrageous behavior," G.B. waited until Nhin completed the massage before leaving Jade Nails.  (*Id.* ¶ 21.)

G.B. ultimately reported the incident to the Allentown Police Department in December 2018.  (*Id.* ¶¶ 22–26.)  The Allentown Special Victim's Unit began an investigation, during which G.B. learned that Nhin had previously been sentenced to probation for similar conduct against an unknown victim at Jade Nails in 2016.  (*Id.* ¶¶ 27–33, 67, 73.)

As a result of Nhin's conduct, G.B. has allegedly suffered from a variety of physical and mental ailments, including, but not limited to, chronic pain, depression, anxiety, an aversion to being touched by men, constant unwelcome thoughts about the incident, nightmares, and loss of sleep.  (*Id.* ¶ 34.)

### B.    Procedural History

On December 24, 2019, G.B. initiated this civil action.  In May 2020, Nhin and Jade Nails were served with process.  (*See* ECF Nos. 7–8.)  On August 21, 2020, the Clerk entered default against Defendants after they failed to appear or otherwise defend against the complaint.  (*See* ECF Nos. 19–20.)  Finally, on November 13, 2020, G.B. filed the instant motion for default judgment.

## II.    STANDARD

District courts have discretion to enter default judgments.  *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984); *see also* FED. R. CIV. P. 55(b)(2).  Before entering a default judgment, we first determine whether we have "subject-matter jurisdiction and personal jurisdiction, whether service of process was proper, and whether the complaint establishes a legitimate cause of action against the defendant."  *Rios v. Marv Loves 1*, No. 13-cv-1619, 2015 WL 5161314, at *8 (E.D. Pa. Sept. 2, 2015) (citations omitted).

We then determine whether a default judgment is appropriate by evaluating the following factors: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct."  *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (citation omitted).  Finally, if we decide to enter a default judgment, we "must address the quantum of damages or other recovery to be awarded."  *Rios*, 2015 WL 5161314, at *13.

## III.    DISCUSSION

### A.    Jurisdiction

We have diversity jurisdiction over this action.  *See* 28 U.S.C. § 1332.  The parties are citizens of different states and the amount in controversy exceeds $75,000.  (*See* Compl. ¶¶ 1–3, 9.)  We also have personal jurisdiction over Defendants.[2]  Finally, Defendants were properly served under Federal Rule of Civil Procedure 4.  (*See* ECF Nos. 7–8.)

---

[2]       "[P]laintiffs retain the burden of proving personal jurisdiction" on a motion for default judgment, but they "can satisfy that burden with a *prima facie* showing" and "may rest their argument on their pleadings."  *D'Onofrio v. Il Mattino,* 430 F. Supp. 2d 431, 438 (E.D. Pa. 2006) (internal quotation marks and citation omitted).  For purposes of this motion, we "must accept as true the jurisdictional allegations in the complaint."  *Id.* at 439.

G.B. has met her burden here.  G.B. alleges, and we therefore accept, that Jade Nails is a Pennsylvania company with its principal place of business in Pennsylvania.  (*See* Compl. ¶ 2.)  We therefore have personal jurisdiction over Jade Nails.  *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (recognizing place of incorporation

**B.     Causes of Action**

We next determine whether the undisputed facts provided in G.B.'s complaint establish legitimate causes of action.  Here, we "accept[] as true the well-pleaded factual allegations in the plaintiff's complaint, except those relating to damages, as though they were admitted or established by proof, as well as all reasonable inferences that can be drawn therefrom."  *State Farm Fire & Cas. Co. v. Hunt*, No. 14-06673, 2015 WL 1974772, at \*3 (E.D. Pa. May 4, 2015) (citation omitted).  "Conclusory allegations and the parties' legal theories or conclusions of law, however, are not entitled to the same presumption and are not deemed admitted."  *Id.* (citation omitted).

**1.     Counts One and Two (Assault and Battery – Nhin)**

We will analyze G.B.'s assault and battery claims simultaneously.  Under Pennsylvania law:

> [A]n individual commits the tort of battery when he or she intentionally causes a "harmful or offensive" contact with another person's body.  An individual commits the tort of assault when he or she acts to cause an actual battery or to place another person in "imminent apprehension" of a battery, thereby causing the person to be "put in such imminent apprehension."

*Rios,* 2015 WL 5161314, at \*12 (internal citations omitted).

Taking the facts in G.B.'s complaint to be true, we find that she has alleged a legitimate cause of action for battery.  Nhin caused a harmful or offensive contact with G.B. by touching her genitalia without consent.  (*See* Compl. ¶¶ 16–20.)  Further, because the facts demonstrate that Nhin acted with the intent to cause the battery (*id.*), G.B. has satisfactorily pleaded assault.[3]

---

and principal place of business as "paradigm" bases for general personal jurisdiction).  We also have personal jurisdiction over Nhin because the incident occurred in Pennsylvania and he was properly served in Pennsylvania.

[3]     Nhin placed G.B. in imminent apprehension of a harmful or offensive contact.  Indeed, as Nhin touched G.B.'s breasts, she became "scared" and "frightened," growing "concerned that . . . Nhin was deliberately touching her in a sexual manner."  (Compl. ¶¶ 18, 21.)

### 2.      Count Three (Intentional Infliction of Emotional Distress – Nhin)

"An action for intentional infliction of emotional distress [] requires a plaintiff to show that (1) the conduct is extreme; (2) the conduct is intentional or reckless; (3) the conduct caused emotional distress; and (4) the distress is severe." *McKay v. Krimmel*, No. 18-2112, 2020 WL 1479133, at *5 (E.D. Pa. Mar. 25, 2020) (internal quotation marks and citation omitted). "Pennsylvania law requires that there be proof of severe emotional distress as shown by objective medical evidence." *Doe v. Whitebread*, No. 3:15-1165, 2017 WL 590272, at *3 (M.D. Pa. Feb. 14, 2017) (citing *Kazatsky v. King David Mem'l Park, Inc.*, 527 A.2d 988, 995 (Pa. 1987)).

At this stage, G.B. has established the first three elements.  Nhin's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Kasper v. Cnty. of Bucks*, 514 F. App'x 210, 217 (3d Cir. 2013) (internal quotation marks and citation omitted).  By fondling G.B.'s genitalia without her consent and under the guise of a legitimate massage, Nhin intentionally engaged in conduct that could be considered "utterly intolerable in a civilized community."  *Id.* (internal quotation marks and citation omitted).[4]  And G.B. suffered emotional distress and related physical ailments because of the incident.  (Compl. ¶¶ 42–43.)

But G.B. has not yet substantiated her claim with "competent medical evidence showing that [s]he has suffered severe emotional injury."  *Lopez v. Maczko*, No. 07-1382, 2008 WL 4083016, at *8 (E.D. Pa. Aug. 28, 2008) (citations omitted); *see also Simril v. Twp. of Warwick*, No. 00-5668, 2003 WL 1204104, at *2 (E.D. Pa. Mar. 18, 2003) ("To recover for intentional infliction of emotional distress in Pennsylvania, the plaintiffs must support their claims with competent medical evidence in the form of expert medical evidence." (citations omitted)).  We

---

[4]      *Cf. Whitebread*, 2017 WL 590272, at *3 (recognizing that nonconsensual contact of a sexual nature is "patently offensive and harmful").

decline to hold this against her.  Medical evidence is not required at the pleading stage, so it would be unfair to fault G.B. for not furnishing that evidence alongside her complaint.  *See Kornegey v. City of Phila.*, 299 F. Supp. 3d 675, 684 (E.D. Pa. 2018) ("[M]ost federal district courts in this circuit have declined to require specific allegations of medical evidence at the motion to dismiss stage, and there is nothing . . . that suggests . . . a heightened pleading requirement.").

G.B.'s complaint states a legitimate claim for intentional infliction of emotional distress. That being said, entry of default judgment on this count will be conditioned on her ability to produce competent medical evidence at a hearing.  *Cf. House v. Smith*, No. 2:18-cv-04283, 2021 WL 3185647, at *8 (E.D. Pa. July 28, 2021) (conditionally granting default judgment pending a hearing); *Harris v. Bennett*, 746 F. App'x 91, 93–94 (3d Cir. 2018) ("[A] default is treated as an admission of the facts alleged, but the plaintiff may still be required to prove that she is entitled to the damages that she seeks.").

### 3.    Counts Four and Five (Negligence – Jade Nails)

G.B. next alleges that Jade Nails was negligent in both hiring and supervising Nhin.  "A claim for negligent hiring or supervision under Pennsylvania law requires a plaintiff to demonstrate the four elements of a common law negligence claim: duty, breach, causation, and damages." *Court v. Loews Phila. Hotel, Inc.*, No. 16-4848, 2017 WL 569522, at *4 (E.D. Pa. Feb. 13, 2017) (citing *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 487–88 (3d Cir. 2013)).  "To set forth a claim for negligent hiring, [G.B.] must show that [Jade Nails], knew or was on notice that [Nhin] had a propensity for misconduct but still hired him thereby exposing her to danger."  *Scruggs v. Whiting-Turner Contracting Co.*, No. 17-cv-3202, 2018 WL 3831408, at *4 (E.D. Pa. Aug. 10, 2018) (citing *Brezenski v. World Trade Transfer, Inc.*, 755 A.2d 36, 39–40 (Pa. Super. Ct. 2000)). On other hand, to establish a claim for negligent supervision, "a plaintiff must demonstrate that an

employer failed to exercise ordinary care to prevent intentional harm to a third party when that harm was (i) committed on the employer's premises, (ii) committed by an employee acting outside the scope of his or her employment, and (iii) was reasonably foreseeable." *Court*, 2017 WL 569522, at *4 (citing *Belmont*, 708 F.3d at 487–88).

G.B.'s negligent hiring claim falls short because she has not established that Nhin committed any bad acts prior to his hiring at Jade Nails. In other words, G.B. fails to allege that Jade Nails "knew or reasonably should have known that [Nhin] had a propensity for sexually harassing behavior or assault" and hired him anyway. *Rios*, 2015 WL 5161314, at *13.

However, G.B. has made out a plausible claim for negligent supervision. First, the actions giving rise to this case occurred at Jade Nails. (Compl. ¶ 46.) Second, by committing assault and battery against G.B. (*see supra* Section III.B.1), Nhin acted outside the scope of his employment. *See, e.g.*, *Shaup v. Jack D's, Inc.*, No. Civ. A. 03-5570, 2004 WL 1837030, at *2 (E.D. Pa. Aug. 17, 2004) ("Conduct of a servant is not within the scope of employment if it[] is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." (internal quotation marks and citation omitted)). Finally, Nhin's conduct was reasonably foreseeable. "An employer can only be liable for negligent supervision if it knew, or should have known, that the employee ha[d] dangerous propensities that might cause harm to a third party." *McMahon v. Arsenberger Trucking Co., Inc.*, No. 17-1242, 2018 WL 4855458, at *9 (E.D. Pa. Oct. 5, 2018) (internal quotation marks and citation omitted). Here, G.B. alleges that Nhin "had previously been arrested for similar sexual crimes occurring on [Jade Nails'] premises in July of 2016." (Compl. ¶ 67; *see also id.* ¶¶ 32–33, 73.) Taken as true, this supports a reasonable inference that Jade Nails knew or should have known of Nhin's propensity for causing harm to third parties.

### 4.      Count Six (Vicarious Liability – Jade Nails)

G.B. also alleges that Jade Nails is vicariously liable for the "wrongful and negligent acts" that Nhin committed "while acting in the course and scope of his employment." (*Id.* ¶¶ 56–57.) "[A]n employer is held vicariously liable for the negligent acts of his employee which cause injuries to a third party, provided that such acts were committed during the course of and within the scope of the employment." *Belt v. GEO Grp., Inc.*, No. 06-1210, 2007 WL 1030530, at *6 (E.D. Pa. Apr. 4, 2007) (quoting *Costa v. Roxborough Mem'l Hosp.*, 708 A.2d 490, 493 (Pa. Super. Ct. 1998)). "An assault committed by an employee upon another person for personal reasons or in an outrageous manner is not actuated by an intent to perform the business of the employer and is thus not within the scope of employment." *Id.* (citing *Costa*, 708 A.2d at 493).

We have already concluded that Nhin was acting outside the scope of his employment when he committed the assault and battery in question. (*See supra* Section III.B.3.)  As a result, G.B. cannot hold Jade Nails vicariously liable for Nhin's conduct.

### 5.      Count Seven (Sex Trade Liability – Jade Nails)

Finally, G.B. alleges that Jade Nails violated Pennsylvania's human trafficking statute. 18 PA. CONS. STAT. § 3051.  The statute enables a victim of the sex trade to bring a civil action against any person that "recruits, profits, or maintains [a] victim in any sex trade act." 18 PA. CONS. STAT. § 3051(a)(2)(i); *see id.* § 3051(b)(3) (extending liability to an entity that "supervises or exercises control over a person liable under subsection (a)(2)").

The statute does not define "sex trade act," but it does define "sex trade" as "[a]n act, which if proven beyond a reasonable doubt, could support a conviction for violation or attempted violation of Chapter 59 (relating to public indecency) or section 6312 (relating to sexual abuse of children)." *Id.* § 3051(k).  Without minimizing the disturbing nature of G.B.'s allegations, we

cannot reasonably infer that she was subjected to any acts that meet this statutory definition.  *See G.B. v. Jade Nails Hair Spa*, No. 5:19-cv-06093-JMG, 2021 WL 979837, at *3 (E.D. Pa. Mar. 16, 2021).  Consequently, G.B. cannot state a plausible claim for sex trade liability against Jade Nails.

### C.    Appropriateness of Default Judgment

G.B. has established several legitimate causes of action against Nhin and Jade Nails, so we now consider the "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain*, 210 F.3d at 164.

All three factors suggest that a default judgment is appropriate here.  Defendants still have not appeared in this action, and any further delay would prejudice Plaintiff.  *See Einhorn v. Klayman Produce Co., Inc.*, No. 13-1720, 2013 WL 6632521, at *4 (E.D. Pa. Dec. 17, 2013) ("Defendant's lack of participation in this action continues to cause prejudice to Plaintiff.").  Next, we may presume that "an absent defendant who has failed to answer has no meritorious defense." *Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 271 (E.D. Pa. 2014) (citation omitted).  Finally, Defendants' "failure or refusal to engage[] in the litigation process and [to] offer[] no reason for this failure or refusal may qualif[y] as culpable conduct with respect to the entry of a default judgment—indeed, for the Court to conclude otherwise would be to reward the recalcitrant or the oppositional and uncooperative."  *Id.* (internal quotation marks and citation omitted).

### D.    Damages

We finally consider damages.  Federal Rule of Civil Procedure 55(b)(2) allows courts to hold a hearing to "determine the amount of damages" and "investigate any other matter" before entering a default judgment.  Plaintiff's claims are not for a sum certain, so entry of default judgment will be conditioned on the proof of damages—and, with respect to the intentional

infliction of emotional distress claim, the presentation of medical evidence—at an upcoming hearing.

## IV.     CONCLUSION

For the foregoing reasons, Plaintiff's motion for default judgment is conditionally granted in part.  An appropriate Order follows.

BY THE COURT:


*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge