IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| G.B., | : | |
|        Plaintiff, | : | |
| | : | |
| v. | : | Civil No. 5:19-cv-06093-JMG |
| | : | |
| JADE NAILS HAIR SPA, *et al.*, | : | |
|        Defendants. | : | |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                                                            September 12, 2023

      Plaintiff G.B. filed a complaint against Defendants Allen Nhin and Jade Nails Hair Spa for claims stemming from an assault that occurred when Plaintiff sought a massage by Nhin at Jade Nails. Following entries of default against Defendants for failing to appear, plead, or otherwise defend, the Court granted default judgment as against Nhin for assault and battery and conditionally granted default judgment for intentional infliction of emotional distress contingent on the submission of medical evidence. The Court also granted default judgment against Jade Nails for negligent supervision. The Court then held a damages and evidentiary hearing. Plaintiff now awaits a damages award.

      For the following reasons, the Court finds default judgment as to Plaintiff's IIED claim is not warranted. Concerning Plaintiffs' remaining claims, Plaintiff is awarded $600,000.00 in damages to encompass both compensatory damages and punitive damages against Defendants Nhin and Jade Nails.

1

1. **Background**

On December 24, 2019, G.B. initiated the present civil action based on the December 2017 events at Jade Nails. G.B. brought claims against Nhin, Jade Nails, and Jade Nails' purposed landlord of the property, Larken Associates.[1] In May 2020, Nhin and Jade Nails were served with process. *See* ECF Nos. 7-8. On August 21, 2020, the Clerk entered default against Defendants Nhin and Jade Nails after they failed to appear or otherwise defend against the complaint. *See* ECF Nos. 19-20. On November 13, 2020, G.B. moved for default judgment against Jade Nails and Nhin. ECF No. 22. The Court then conditionally granted default judgment in part concerning G.B.'s intentional infliction of emotional distress claims against Nhin; accordingly, default judgment is conditioned on G.B.'s ability to produce competent medical evidence at a hearing. *See* ECF Nos. 26-27. The Court also granted default judgment concerning G.B.'s claims of battery and assault against Nhin, and negligent supervision against Jade Nails. *See id.* The Court then held a hearing on January 18, 2022, to determine Plaintiff's damages.[2]

---

[1] On March 15, 2021, the Court granted Defendant Larken's Motion to Dismiss Plaintiff's one claim against it under Pennsylvania's human trafficking statute. *See generally* ECF Nos. 24, 25.

[2] A party's default is deemed to be a concession of all well pleaded allegations of liability. *Doe v. Neal*, No. SA-14-CA-102-XR, 2015 WL 3688259, at *1 (W.D. Tex. June 12, 2015) (citing *Jackson v. FIE Corp.*, 302 F.3d 515, 524 (5th Cir. 2002)). Nevertheless, the Court held a hearing to determine damages under Federal Rule of Civil Procedure 55(b)(2). *See id.*; *see also* FED. R. CIV. P. 55(b)(2).

A. **Factual Background** [3]

In December 2017, G.B., visited family in Pennsylvania when she decided to obtain massage therapy for neck and back pain. Compl., ECF No. 1 ¶¶ 11-13. G.B. sought a full body massage. Evidentiary Hearing, ECF No. 39 at 9 ¶¶ 20-21. G.B went with her daughter and niece to Jade Nails, a spa located in Allentown. ECF No. 1 ¶¶ 11-13. Nhin, a male masseuse at Jade Nails offered to perform the massage and escorted G.B. to a private room. *Id.* ¶¶ 14-15.

The massage started normally, but Nhin then began to massage G.B.'s breasts. *Id.* ¶ 16. G.B. "froze." ECF No. 39 at 10 ¶¶ 6. Although G.B. believed the touching to be inappropriate, she thought this could perhaps be part of a legitimate message therapy procedure. ECF No. 1 ¶17. Nhin then touched G.B.'s nipples, "at which point [G.B.] began to become concerned that … Nhin was deliberately touching her in a sexual manner." *Id.* ¶18.

Nhin then moved towards G.B.'s pelvis and reached her genitalia at which point she forcibly stopped him from touching her genitalia any further. *Id.* ¶¶ 17-20. G.B. then told Nhin that she "did not need a massage down there." ECF No. 39 at 10 ¶¶ 5. "Scared, frightened, and hoping for a quick end to this outrageous behavior," G.B. waited until Nhin had completed the massage before leaving Jade Nails. ECF No. 1 ¶ 21.

G.B. "processed" the incident over time. ECF No. 39 at 10 ¶¶ 11. After a period of about one and a half years later, G.B. ultimately reported the incident to the Allentown Police Department in December 2018. ECF No. 1 ¶¶ 22-26.; *see also* ECF No. 39 at 10 ¶¶ 15,18. G.B. describes that

---

[3] Although the court accepts the allegations in Plaintiff's Complaint as true, Plaintiff's testimony during the damages hearing in this case, as well as Plaintiff's supplemental briefing containing additional damages explanations, provides more details than her Complaint regarding what occurred in December of 2017. Thus, the court relies on Plaintiff's Complaint, testimony at the damages hearing, and supplemental records submitted by Plaintiff's counsel. *See Doe v. Whitebread*, No. CV 3:15-1165, 2017 WL 590272, at *2 (M.D. Pa. Feb. 14, 2017) (relying on a plaintiff's affidavit to supplement the allegations in plaintiff's complaint when considering and awarding compensatory damages for emotional harm and punitive damages).

she picked Nhim out from a line up. *Id*. ¶¶ 16-18. The Allentown Special Victim's Unit began an investigation, during which G.B. learned that Nhin had previously been sentenced to probation for similar conduct against an unknown victim at Jade Nails in 2016. ECF No. 1 ¶¶ 27-33, 67, 73; *see also* ECF No. 39 at 10 ¶¶ 19-22 (Testimony that a detective in the Allentown Special Victim's Unit provided Nhim had related priors).

As a result of Nhin's conduct, G.B. has suffered from a variety of physical and mental ailments, including, but not limited to, chronic pain, depression, anxiety, an aversion to being massaged by men, constant unwelcome thoughts about the incident, nightmares, and loss of sleep.[4]

### B. Damages Hearing

The Court scheduled a damages and evidentiary hearing on January 18, 2022. *See*, ECF Nos. 29, 33. The Court directed Plaintiff to prepare to offer testimony and/or evidence to support damages at the hearing—including competent medical evidence to support her intentional infliction of emotional distress claims. *See* Order, ECF No. 27. On November 23, 2021, G.B. submitted a written explanation of damages which included medical records provided by Healthcare Partner Medical Group showing that G.B. suffers from depression/major depressive disorder, insomnia, generalized anxiety disorder, and neck and shoulder pain. Pl.'s Written Explanation of Damages Brief, ECF No. 38 at 5. The medical records also provided that G.B. requested and was prescribed medication for anxiety and insomnia, and she participated in a three-to-six-month psychotherapy program to handle the effects of the trauma. *Id.* at 8-10.

On January 18, 2022, the Court held a damages and evidentiary hearing. At the hearing, G.B. testified to the sexual assault she endured at the hands of Nhin. ECF No. 39 at 9-10. G.B. also testified that she continues to suffer from these mental ailments and would benefit from

---

[4] ECF No. 1 ¶ 34. Plaintiff provided further evidence of damages in supplemental briefs and throughout the Court's damages hearing. *See infra* pgs. 4-5.

additional therapy, but it is difficult considering she only feels comfortable with female doctors following the assault and it is difficult to find a therapist due to repercussions of COVID-19. *Id.* at 18 ¶¶ 12-18.  During the hearing, G.B. also testified to the monetary damages she suffered, which were identical to expenses laid out in an itemized damages chart she later submitted to the Court. *Id.* at 18-19.  During the hearing, G.B., through her attorney, requested the court to award damages of no less than $500,000.00. *Id.* at 22 ¶¶ 8.

At the close of the damages hearing, the Court directed counsel to provide an itemized summary of Plaintiff's monetary expenses directly stemming from the conduct at issue in this matter.  *Id*. at 23 ¶¶ 13.  The Court also asked counsel to provide legal research showing damages awards in cases under similar circumstances and within comparable geographic areas. *Id.* at 22 ¶¶ 14-25.

On January 13, 2023, following email correspondence with the Court, G.B. submitted a supplemental brief containing additional explanation of the damages requested; G.B's submission included and itemized damages chart which included eleven different monetary amounts without verified receipts of purchase.[5]  G.B.'s supplemental brief also included an article from the *Tampa Bay Times* describing a jury award of $47.4M for a sexual battery case with similar facts to the instant action.[6]

---

[5] ECF No. 38 at 19 (providing itemized damages totaling $3,211.08, and including, inter alia, cost amounts for a massage at Jade Nails, a plane ticket for the Pennsylvania Police Department, room and board, psychiatrist appointments, medication costs, and plane tickets to travel to the Court's damages hearing).

[6] *See*, ECF No. 38 at 20, 23-30 (The Court notes Plaintiff's counsel provided a case reference in the format of a Tampa Bay Times article without a sufficient case citation.  The Court's own research could not locate Plaintiff's proffered case in support of its damages request).

2. **Applicable Law**

    a. **Default Judgment**

"Although all well-pleaded facts in the plaintiff's complaint are accepted as true after entry of default, the default itself does not establish liability or conclusions of law." *Doe v. Whitebread*, No. CV 3:15-1165, 2017 WL 590272, at *2 (M.D. Pa. Feb. 14, 2017) (citing *Martin v. Nat'l Check Recovery Servs., LLC*, Civil No. 1:12-CV-1230, 2016 WL 3670849, at *1 (M.D. Pa. July 11, 2016); 10A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2688.1 (4th ed. 2016)). "A default also does not establish the amount of damages that are appropriate." *Id.* (citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990); *Martin*, 2016 WL 3670849, at *1). Under Federal Rule of Civil Procedure 55(b)(2), a Court may hold a hearing to determine any facts needed to establish liability and facts needed to determine damages. FED. R. CIV. P. 55(b)(2).

    b. **Compensatory Damages**

The Supreme Court of Pennsylvania has found "[n]o legal yardstick can be fashioned to measure accurately reasonable compensation" for pain and suffering. *Herb v. Hallowell*, 154 A. 582, 584 (Pa. 1931). In fashioning a compensatory damages award concerning pain and suffering, "such an award should include compensation for a Plaintiff's physical pain and suffering, as well as for any mental anguish, inconvenience, disfigurement, humiliation, and the loss of enjoyment of life". *McDonald v. United States*, 555 F. Supp. 935, 971 (M.D. Pa. 1983) (internal citations omitted). In the process of determining compensatory damage awards, courts have found "systematic logic is not helpful and precision is not achievable." *Id.* (quoting *Frankel v. Heym*, 466 F.2d 1226, 1228 (3d Cir. 1972)).

Here, [t]he [C]ourt is faced with a 'difficult task' in attempting to place a value on the plaintiff's emotional damage, 'both because the extent of emotional injury does not readily

6

translate into dollar amounts and because few truly comparable cases can be found.'" *Whitebread*, 2017 WL 590272, at *4. Concerning emotional damages, "[t]he [U.S. Court of Appeals for the] Third Circuit has not discussed what factors might go into assessing a damages award for pure emotional distress." *Whitebread*, 2017 WL 590272, at *4. But "[m]any courts methodically collect and compare similar cases to establish the appropriateness of the award." *Id*. (internal footnote omitted). And, "[g]enerally, under Pennsylvania law, damages need not be proved with mathematical certainty, but only with reasonable certainty, and evidence of damages may consist of probabilities and interferences." *Bailets v. Pennsylvania Tpk. Comm'n*, 181 A.3d 324, 336 (Pa. 2018) (internal citations omitted).

    **c. Punitive Damages**

"Pennsylvania law has adopted Section 908 of the Restatement (Second) of Torts, which provides that punitive damages may be 'awarded to punish a defendant for outrageous conduct, which is defined as an act which, in addition to creating 'actual damages, also imports insult or outrage, and is committed with a view to oppress or is done in contempt of plaintiff's rights.'" *Carson v. Tucker*, No. 5:20-CV-00399, 2020 WL 4015244, at *2 (E.D. Pa. July 16, 2020) (quoting *Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230, 235 (3d Cir. 1997) (quoting *Delahanty v. First Pa. Bank, N.A.*, 464 A.2d 1243, 1263 (Pa. Super. Ct. 1983)). So ". . . punitive damages may be awarded 'when the plaintiff has established that the defendant acted in an outrageous fashion due to either the defendant's evil motive or his reckless indifference to the rights of others.'" *Miller v. TJX Companies, Inc.*, No. CV 19-252, 2019 WL 1168120, at *3 (E.D. Pa. Mar. 12, 2019) (quoting *Phillips v. Cricket Lighters*, 883 A.2d 439, 445 (Pa. 2005)). "This includes conduct which is 'malicious, wanton, reckless, willful, or oppressive.'" *Carson*, 2020 WL 4015244, at *2 (quoting *Feld v. Merriam*, 485 A.2d 742, 747-48 (Pa. 1984)). "A defendant acted

recklessly if [they] subjectively appreciated—that is, knew or should have known—the risk of harm and acted in conscious disregard of it." *Dragone v. Pew*, 621 F. Supp. 3d 561, 567 (E.D. Pa. 2022) (citing *Hutchison ex rel. Hutchison v. Luddy*, 582 Pa. 114, 870 A.2d 766, 772 (2005)). And, "[i]n an assault and battery case, there must be malicious, wanton, reckless, willful, or oppressive conduct on the part of the defendant" to support punitive damages. *Whitebread*, 2017 WL 590272, at *5 n.4 (M.D. Pa. Feb. 14, 2017) (citing *Chambers v. Montgomery*, 192 A.2d 355, 358 (Pa. 1963)). Although there is no precise mathematical calculation in determining punitive damages, courts look to whether there is a "reasonable relationship" between compensatory and punitive damages. *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 566-67, 580-81 (1996).

3. **Findings of Fact and Conclusions of Law**

   A. <u>**Default Judgment as to Plaintiff's IIED claim**</u>

On November 13, 2020, Plaintiff moved for default judgment concerning several of her claims. *See generally* ECF No. 22. On September 13, 2021, the Court conditionally granted Plaintiff's Motion for Default Judgment in part concerning Plaintiff's intentional infliction of emotional distress (IIED) claim. Order, ECF No. 27. The Court found "entry of default judgment on this count will be conditioned on her ability to produce medical evidence at hearing." Mem. Op., ECF No. 26 at 6 (citing *House v. Smith*, No. 2:18-cv-04283, 2021 WL 3185647, at *8 (E.D. Pa. July 28, 2021); *Harris v. Bennett*, 746 F. App'x 91, 93–94 (3d Cir. 2018)). So Plaintiff's default judgment motion as to her IIED claim relies on her ability to provide "competent medical evidence showing that [s]he has suffered severe emotional injury." *Lopez v. Maczko*, No. 07-1382, 2008 WL 4083016, at *8 (E.D. Pa. Aug. 28, 2008) (citations omitted); *see also Simril v. Twp. of Warwick*, No. 00-5668, 2003 WL 1204104, at *2 (E.D. Pa. Mar. 18, 2003) ("To recover for

8

intentional infliction of emotional distress in Pennsylvania, the plaintiffs must support their claims with competent medical evidence in the form of expert medical evidence." (citations omitted)).

Here, although Plaintiff testified to her emotional distress among other injuries, Plaintiff did not offer any objective medical evidence to support her IIED claim. *Cf. Whitebread*, 2017 WL 590272, at *3 (M.D. Pa. Feb. 14, 2017) (citing *Kazatsky v. King David Memorial Park, Inc.*, 527 A.2d 988, 995 (Pa. 1987)). Plaintiff provided medical records that appear to have been completed by a medical professional. *See* ECF No. 38 at 8-10. But Plaintiff did not proffer a medical expert, nor an affidavit completed by a medical expert, to support her IIED claim. *Cf. Simril v. Twp. of Warwick*, No. 00-5668, 2003 WL 1204104, at *2 (E.D. Pa. Mar. 18, 2003); *see also Bolden v. Se. Pennsylvania Transp. Auth.*, 21 F.3d 29, 35 (3d Cir. 1994) ("Under Pennsylvania law, expert medical evidence must be presented before a plaintiff can recover for intentional infliction of emotional distress.") (citations omitted).

Because Plaintiff has not offered any objective medical evidence as required under Pennsylvania law, the court will not award default judgment as to Plaintiff's IIED claim. Because default judgment has been entered as to Plaintiff's claims of Nhin for assault and battery as against Nhin, and negligent supervision as against Jade Nails, the Court will now consider Plaintiff's request for damages.

### A. Plaintiff's Request for Damages

Plaintiff seeks a damages award for compensatory damages and punitive damages for her claims of battery and assault against Defendant Nhin, as well as her claims of negligent supervision against Defendant Jade Nails.

The Court finds Plaintiff's testimony to be credible. Plaintiff's testimony during the hearing showed that the incident has had a lasting and damaging impact on her—particularly in

terms of mental and emotional effects. Plaintiff testified to the medical treatment she has sought and received over the years due to her struggles with anxiety, lack of sleep, and depression. ECF No. 39 at 13-18. Although Plaintiff did not offer evidence in the form of medical expert testimony, Plaintiff provided credible testimony concerning her medical treatments, as well as medical reports in her briefing. *Id.*; *see also* ECF No. 38. Plaintiff also testified to her continued emotional distress due to the underlying incident—and Defendants' conduct— in this case. *See generally* ECF No. 39.

### a. Plaintiff's Award for Compensatory Damages

Plaintiff included an itemized chart of expenses for which she seeks compensation for in her additional explanation of damages which was submitted in January 2023. ECF No. 38 at 19. Plaintiff's supplemental brief provided she incurred the following expenses, inter alia: a massage at Jade Nails for $74.00, multiple plane tickets in connection with the lawsuit totaling $1,498.18, psychiatric visits and medication costs because of the assault totaling $108.47, room and board with Ms. Perry for a total of $400, and two rental car expenses for a total of $1,130.75. *Id.* These expenses amounted to a total of $3,211.08. *Id.* This itemized chart was the only evidence of expenses presented by Plaintiff and were the same expenses she testified to at the damages hearing.[7]

A compensatory damages award should compensate Plaintiff for emotional pain and suffering, as well as physical pain. *See McDonald*, 555 F. Supp. at 971. Here, a compensatory damages award covering Plaintiff's emotional and physical suffering is warranted due to Plaintiff's testimony and additional evidence presented. Plaintiff's medical records, which indicate she

---

[7] The Court notes the itemized chart produced did not include any receipts nor additional proof of the expenses. *See generally* ECF No. 38 at 19. Nevertheless, the Court finds Plaintiff's testimony credible concerning her costs related to the underlying incident in this case.

sought treatment after the assault, as well as Plaintiff's in-person testimony at the damages hearing are sufficient to establish her emotional pain and suffering. *See Whitebread*, 2017 WL 590272, at *4-5 (awarding compensatory damages even upon finding "plaintiff ha[d] not submitted medical records or other expert reports to clarify the extent of her emotional damages"). Here, Plaintiff testified to her need for additional therapy and the difficulty in finding a therapist she feels comfortable going to because of her discomfort with male providers following her assault. ECF No. 39 at 18 ¶¶ 3-5,7,13. Plaintiff also testified she continues to have unwelcome thoughts about the assault and suffers from nightmares and loss of sleep. *Id.* at 11 ¶¶ 7-13. Plaintiff testified, as a result of the assault, she becomes angry towards the people around her and continues to suffer from mental ailments. *Id.* at 19 ¶¶18-20. And, although unsupported by a medical expert, Plaintiff's medical records indicate she sought medical treatment and was apparently prescribed medication following the assault. ECF No. 38 at 5-10.

Therefore, Plaintiff is entitled to a damages award for her mental and emotional injuries. *See Greene v. United States*, 540 F. Supp. 3d 467, 480-81 (M.D. Pa. 2021) (finding a damages award for physical, mental, and emotional injuries appropriate where plaintiff demonstrated loss of sleep, medication, and additional struggles in physical activities although plaintiff lacked extensive "document[ation] . . . of the affirmative steps taken to treat her physical pain"). In this case, the routinely difficult task of translating emotional injury into a dollar amount is even more challenging due to the scarcity of case law with comparable underlying facts and evidence of expenses like those presented by Plaintiff. Nevertheless, a federal court in the Middle District of Pennsylvania's damages award and reasoning in *Doe v. Whitebread* is instructive. 2017 WL 590272, at *4. In *Doe v. Whitebread*, the case involved a police officer who, after stopping a woman in her car on the street and confiscating what he suspected to be marijuana, later followed

the woman to her apartment threatened her with jail time. *Id*. at *2. The officer then engaged in nonconsensual intercourse with the woman. *Id*. In *Whitebread*, the district judge considered, inter alia, plaintiff's motion for default judgment and motion for damages. *See generally, Id.* So, like the present action, the court in *Whitebread* had to evaluate a damages award for injuries stemming from an underlying sexual assault.[8]

The district court in *Whitebread* considered a variety of factors in crafting a damages award. First, the court reviewed cases with comparable facts. *See, Whitebread*, 2017 WL 590272, at *4-5. The court also considered plaintiff's evidence in support of her claims, including the fact that the plaintiff did not submit any medical records clarifying the extent of her emotional injuries. *Id.* at *5. Additionally, the court considered the plaintiff's lack of an indication that she was undergoing mental health treatment as part of the determination for compensatory damages. *Id.* The court also considered the severity and pattern of the violence plaintiff suffered. *Id*. Ultimately, the court awarded the plaintiff in *Whitebread* compensatory damages award of $100,000.00, and a punitive damages award of $150,000.00. *See, Id.* at *5-6.

Using the court in *Doe v. Whitebread's* considerations, it is appropriate for Plaintiff to be awarded $150,000.000 in compensatory damages. Here, similar to the plaintiff in *Whitebread*, Plaintiff experienced a sexual assault committed by Defendant Ninh. Ninh's sexual assault of Plaintiff occurred during Ninh's shift at his place of work, Defendant Jade Nails when Plaintiff sought legitimate services. Plaintiff contends Ninh continued to work at Jade Nails despite his previous criminal history involving similar conduct at Jade Nails in 2016. Unlike the plaintiff in *Whitebread*, Plaintiff in the present action submitted some documentation and provided testimony indicating the extent and severity of her emotional injuries. Plaintiff also showed evidence in

---

[8] The Court notes, however, that the present action does not involve a sexual assault by a police officer.

support of her efforts to seek out mental health treatment. Moreover, Plaintiff's in-person testimony detailed Plaintiff's lasting mental and emotional distress resulting from the underlying incident in this case; Plaintiff's testimony and supplemental briefs provide she continues to suffer from physical effects of the underlying assault, such as loss of sleep, several years after the underlying incident. Plaintiff also described persistent symptoms of anxiety and depression stemming from the incident. Furthermore, this compensatory damages award should compensate Plaintiff for various costs she underwent as a result of Defendants' conduct. Therefore, under these circumstances, the Court finds an award of $150,000.00 is warranted. Defendants Nhin and Jade Nails are to be joint and severally liable for this award.

### b. Plaintiff's Award or Punitive Damages

The Court shall also award punitive damages in the amount of $225,000.00 against Defendant Nhin, and in the amount of $200,000.00 against Defendant Judge Nails. Here, Plaintiff seeks punitive damages because, she contends, Defendant Nhin's conduct was not only intentional and egregious but also demonstrated an indifference to Plaintiff's rights and safety. The Court agrees and finds the actions of Nhin "amounted to intentional, willful, wanton, or reckless conduct" largely due to Nhin's use of his legitimate employment position to assault a member of the public seeking legitimate services. *Miller v. TJX Companies, Inc.*, No. CV 19-252, 2019 WL 1168120, at *3 (E.D. Pa. Mar. 12, 2019). In the course of his employment at Jade Nails, Nhin identified an innocent person seeking legitimate services and sexually assaulted her under the guise of his employment. And moreover, Defendant Nhin had previously been convicted for similar conduct at Jade Nails, which further shows Nhin's indifference to the rights and safety of others, as well as it shows a need for the punitive damage award to serve as a deterrent.

Although there is no precise mathematical calculation, it is long established that there should be some "reasonable relationship" between the compensatory damage award and the punitive damage award. *BMW*, 517 U.S. at 566-67, 580-81. For these reasons, the Court finds a punitive damage award of $225,000.00 against Defendant Nhin to be appropriate.[9] which presents a 1:1.5 ratio between the compensatory damage award and the punitive damage award.

The Court also finds a punitive damages award against Defendant Jade Nails for their negligent supervision is warranted. Here, G.B.'s assault and battery occurred onsite at Jade Nails, Nhin acted outside the scope of his employment, and Nhin's conduct was reasonably foreseeable based on his previous related criminal acts occurring on Jade Nails' premises. *See* ECF No. 26 at 7 (citing Compl., ¶67; *id.* ¶¶ 32-33, 73). Jade Nails' negligence supervision of Defendant Nhin despite his previous criminal activity in the course of employment demonstrated a reckless indifference to Plaintiff's safety and the rights and safety of any member of the general public seeking legitimate services. *See, Dragone v. Pew*, 621 F. Supp. 3d 561, 567 (E.D. Pa. 2022) ("Punitive damages can be awarded for a defendant's outrageous conduct, evil motive or reckless indifference to others.") (*citing, Feld v. Merriam*, 485 A.2d 742, 747 (Pa. 1984)); *see also, Hutchison*, 582 Pa. at 116, 126 (finding, as a matter of law, punitive damages may be available on a claim sounding in negligent supervision). Jade Nails' continued employment and insufficient supervision of Defendant Nhin further enabled and emboldened Nhin to use his employment to harm others. For these reasons, the court finds a punitive damage award of $225,000 against Defendant Jade Nails is also warranted.

---

[9] The Court notes this punitive damages award presents a 1:1.5 ratio between the compensatory damages award against Nhin and the punitive damages award.

14

4. **CONCLUSION**

For the foregoing reasons, the Court finds default judgment as to Plaintiff's IIED claim is not warranted. Next, concerning Plaintiff's surviving claims of assault and battery against Nhin, and negligent supervision against Jade Nails, Plaintiff is awarded $600,000.00 in damages to be allocated in the following ways: $150,000.00 in compensatory damages against Defendants Nhin and Jade Nails to be jointly and severally liable; $225,000.00 in punitive damages against Defendant Nhin; and $225,000.00 in punitive damages against Defendant Jade Nails.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge